In re TRACY et al.

(District Court, S. D. New York. February 3, 1911.)

No. 12,375.

1. BANKRUPTCY (§ 140*)—PASSING TITLE—PAYMENT.

On the morning of the bankrupts' failure, a bank sent certain securities to them for examination, the bankrupts to send certified checks that day in payment, if satisfied therewith. The bankrupts in the afternoon sent uncertified checks with a written direction to the bank to certify. The checks were delivered shortly before the close of banking hours, were not returned to the bankrupts that day, and on the next were presented at the drawee bank, and certification requested and refused, when they were tendered back to the bankrupts and the securities demanded. Held, that title to the securities did not pass, and that the bank was entitled to reclaim the same from the bankrupts' trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. Pledges (§ 6*)—Rights of Pledgee.**

The bankrupts, on the day they received the securities from the bank having pledged a part of the same while having possession and apparent title, the pledgee acquired a valid lien as against the bank.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 16; Dec. Dig. § 6.*]

**3. Bankruptcy (§ 345*)—Claims—Priority.**

Where the bankrupts' pledge of certain securities belonging to S. and K. was a pure conversion, while a pledge of securities belonging to L., who was dealing with the bankrupts on margin, was within the broker's implied authority, the claim of S. and K. was entitled to priority of payment over that of L.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 531; Dec. Dig. § 345.*]

**4. Bankruptcy (§ 140*)—Reclamation of Property.**

Where a customer, on the morning of the failure of the bankrupts, paid to them $150 as a margin for the purchase of certain stock which the bankrupts thereupon ordered, but bankruptcy intervened before its delivery, the contract was avoided, and the customer was entitled to a return of the money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

In the matter of bankruptcy proceedings of William W. Tracy and others and the firm of Tracy & Co. Proceedings by certain creditors to reclaim property. On exceptions to the report of a special master. Confirmed in part.

See, also, 177 Fed. 532.

Hays, Hershfield & Wolf (Edwin D. Hays, of counsel), for trustee.

Shearman & Sterling (John A. Garver and Carl A. Mead, of counsel), for National City Bank.

Zabriskie, Murray, Sage & Kerr (George Zabriskie, of counsel), for Merchants' National Bank.

Einstein, Townsend & Guiterman (M. S. Guiterman, of counsel), for Nellie K. Skerry.

Louis M. Cohen, for Frederic Kropp.

Robert P. Levis, for Henry I. Gilbert.

Wheeler, Silber & Isaacs (Lewis M. Isaacs, of counsel), for George H. Heafford.

Rosendale & Dodd, for Jamison Bros. & Co.

Lehmaier & Pellet, for Lawrence Wells.

John J. Cushing, for Frances P. Hanzel.

W. Jay Ennisson, for Isaac Pargman.

Moss & Feiner, for Emilie B. Grigsby.

David Paine, for Harriet A. Stoll.

Frank E. Loughran, for Carra F. Seaman.

HOLT, District Judge. I concur in the conclusions of the special master in respect to all the claims passed upon with the following exceptions:

1. Claim of the National City Bank.

The securities sent by the National City Bank to Tracy & Co. on the morning of the failure were left with Tracy & Co. simply to af-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ford them a reasonable time to examine the securities and ascertain whether they were in such a condition as to constitute a good delivery. No title passed by such a delivery. Tracy & Co. were to send certified checks in payment that day, if satisfied with the securities. That afternoon they sent uncertified checks on the Merchants' Bank, with a written direction to the bank to certify. These checks were apparently delivered shortly before the close of banking hours. They were not returned to Tracy & Co. that day. The next morning they were presented at the Merchants' Bank, and a certification requested, which was refused. Thereupon they were tendered back to Tracy & Co., and the securities demanded. Tracy & Co., the day before, had pledged the securities with the Royal Bank of Canada. The special master held that under this state of facts the title had passed. The claim is, as I understand it, that the National City Bank, as soon as it received the uncertified checks, should have refused to receive them, and demanded back the securities, and that, by holding the uncertified checks until the next morning, it waived payment in certified checks and accepted payment in uncertified checks. Undoubtedly, the City Bank was obliged to act promptly; but I think it acted promptly enough. The result was that Tracy & Co. never had any title to the securities. Having possession, and apparent title, they could pledge them with the Royal Bank of Canada, but there was nothing in that transaction which transferred title. They did not sell the securities. They pledged them. The Royal Bank of Canada held simply a valid lien on them. The Royal Bank had the power to sell them in order to foreclose its lien. The bank sold one of the securities, the stock of the North Butte Mining Company, which with other securities satisfied its lien, and returned to the trustee two of the securities, a certificate for 100 shares of the Adventure Consolidated Copper Company and a certificate for 20 shares of the American Locomotive Company. That stock, having been returned to the trustee, stands, in my opinion, in just the same position as though it had never left the possession of Tracy & Co., and I think the City Bank is entitled to recover it. The stock of the North Butte Mining Company was sold by the Royal Bank of Canada. There is no sufficient evidence, in my opinion, to identify the proceeds. If the claim be admitted that the proceeds were attempted to be deposited in the Merchants' National Bank, the proof shows that the check for $21,014.37 was not credited in the account, and that that account in fact was overdrawn. I think therefore that the City Bank cannot recover in respect to that stock.

2. Claims of Skerry, Kampf, and Lester.

I think that the claimants Skerry and Kampf are entitled to priority over Lester. The pledge of the securities of Skerry and Kampf was a pure conversion, while Lester was dealing on a margin, and the pledge of his securities was within the implied authority of the brokers. Instead, therefore, of the claims of Skerry, Kampf, and Lester ranking equally, I think that those of Skerry and Kampf should be paid first, and that then Lester's claim should come against the residue.

**3. Claim of Frederic Kropp.**

I think that Kropp's claim to the return of $150 is good. He paid that money in as margin on the morning of the failure, for the purchase of certain stock. The stock was ordered; but the bankruptcy occurred before its delivery, and therefore the contract was avoided by the bankruptcy. I think, under such circumstances, the $150 was held in trust, and should be returned.

**4. Claim of William D. Marbourg.**

The trustee claims that a mistake has been made in reference to the claim of Marbourg, by which he has been directed to return certain stock which he has not got. If the attorneys for Marbourg and the trustee cannot agree on the facts, that claim will be sent back to the special master to determine that question.

In all other respects, the special master's report is confirmed.